UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASMAA JAMIL,

          Plaintiff,

v.

MERCEDES-BENZ FINANCIAL
SERVICES USA LLC,

          Defendant.
_____/

Case No. 2:22-cv-12101

HONORABLE STEPHEN J. MURPHY, III

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [32]
AND DENYING AS MOOT MOTIONS TO EXTEND AND COMPEL [26, 28]**

Plaintiff Asmaa Jamil sued her former employee, Defendant Mercedes-Benz Financial Services USA, for violations of Title VII of the Civil Rights Act of 1964, the Michigan Elliott-Larsen Civil Rights Act (ELCRA), and the Age Discrimination in Employment Act of 1967 (ADEA). ECF 1, PgID 5–14. She also alleged a breach of contract claim and requested declaratory relief. *Id.* at 14–15. The Court granted Defendant's motion to dismiss the breach of contract claim. ECF 17. Defendant also moved for summary judgment on the claims arising under Title VII, ELCRA, and the ADEA and argued that Plaintiff signed an agreement releasing those claims. ECF 9. But the Court denied the summary judgment motion as premature because some discovery was necessary to evaluate whether the release agreement was valid. *Id.* at 136. Specifically, the Court explained that, although the first four factors strongly supported a valid waiver, it could not evaluate the final factor, "totality of the circumstances," without the benefit of a record. *Id.* The Court therefore ordered that

1

Plaintiff should be allowed some discovery, after which Defendant could again move for summary judgment. *Id.* at 137. Accordingly, after discovery closed, Defendant moved for summary judgment. ECF 32. And the parties fully briefed the motion. ECF 34; 36.[1] For the reasons below, the Court will grant the motion for summary judgment and deny as moot the motions to extend and compel discovery.

## BACKGROUND

Defendant hired Plaintiff in 1998, ECF 1, PgID 2, and gave Plaintiff s an "L3" expatriate position in Singapore that was to begin in March 2020 and end in November 2021. ECF 32-2, PgID 447–49. Plaintiff also worked on assignments in Brazil, India, and China. *Id.* According to Plaintiff, her last expatriate assignment ended because she refused to provide funding for certain auto dealerships in India, but her superiors in India and Singapore disagreed, granted credit to the dealers, and sent her back to the U.S. in May 2020. *Id.* at 451, 467. Plaintiff believed that her superiors in India then blocked her from obtaining a new position with Defendant. *Id.* at 452, 460. When Plaintiff returned to the U.S., Defendant offered Plaintiff a choice between finding another position within the company or accepting a severance package. ECF 32-3, PgID 538–39. Plaintiff believed she would not be able to obtain a different position and decided to accept the package. EFC 32-2, PgID 452, 464. Plaintiff therefore signed a "Separation Agreement and Release" (Agreement). *Id.* at 473–75.

---

[1] Based on the briefing of the parties, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

The Agreement signed by Plaintiff in July 2020 contained a provision titled "Release of Claims":

> [Plaintiff] hereby knowingly and willingly releases and forever discharges [Defendant] . . . from *any and all claims*, demands, actions, causes of action, suits, liabilities, interest, attorneys' fees, damages, or costs of any nature whatsoever, express or implied, that [Plaintiff] may have, or have had, *whether now known or unknown*, arising out of or relating to [Plaintiff]'s employment with [Defendant] . . . including, but not limited to, all workplace disputes, issues or allegations, all claims and rights under federal, [S]tate or local law or regulation, all claims under an employment practice law and civil rights acts (including but not limited to *Title VII* of the Civil Rights Act of 1964, the *Age Discrimination and Employment Act*, . . . and any *similar [S]tate laws*), . . . and all damages, costs, expenses, compensation, benefits, attorneys' fees, and any claims arising out of, or related in any way to, [Plaintiff]'s employment with [Defendant].

*Id.* at 473 (emphases added). The Agreement included an acknowledgment that "[Plaintiff] understands that [she] does not waive any rights or claims in this Agreement that may arise *after* the date [Plaintiff] signs it." *Id.* at 474 (emphasis added). And the contract included an integration clause, by which the Agreement "supersede[d] any and all prior understandings, promises, representations, and agreements, oral or written, with respect to the" Agreement's written consideration. *Id.* at 475.

Defendant gave Plaintiff about four months to consult a lawyer and decide whether to sign the Agreement. *See id.* at 474. Two months before the execution deadline, Plaintiff signed the Agreement. *Id.* at 475. Ultimately, the severance package included eighteen months' pay with the ability to elect retirement and receive the benefits that accompany retirement when Plaintiff turned fifty-five. ECF

3

32-3, PgID 539–40. The benefits included retiree medical benefits, a bonus, phantom share payments, and dividends. *Id.*

Plaintiff argued that the Agreement was invalid because Defendant made misrepresentations about the availability of positions. ECF 34, PgID 568. She alleged that "there were, in fact, several employees under [fifty] years old who were offered L3 positions in the [United States]. Defendant even created new L3 positions for some of these younger employees." ECF 1, PgID 3. But, according to Plaintiff, those alleged "positions were [not] posted to allow employees to apply, and Plaintiff was never informed of th[o]se opportunities." *Id.*

## LEGAL STANDARD

The Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that

4

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

After discovery, Defendant moved again for summary judgment on Plaintiff's remaining claims under Title VII, ELCRA, and the ADEA. ECF 32, PgID 402. And Defendant moved to dismiss the claim for declaratory relief. *Id.* at 403. Defendant moved for summary judgment on the discrimination claims because "the undisputed facts establish that [Plaintiff] knowingly and voluntarily signed a separation agreement that released all claims against MBFS related to her employment." *Id.* at 406. The summary judgment motion thus turns on whether Plaintiff knowingly and voluntarily executed the Agreement.

"Federal law controls the validity of a release of a federal cause of action." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1481 (6th Cir. 1989). And "employers and employees may negotiate a valid release of ADEA[] [and] Title VII . . . claims." *Howard v. DaimlerChysler Corp.*, 290 F. Supp. 2d 784, 790 (E.D. Mich. 2003) (collecting cases). Based on a court's application of "ordinary contract principles,"[2]

---

[2] The Court will analyze whether Plaintiff released ELCRA claims under the same rubric because the Agreement provided that it would "be governed by and construed exclusively in accordance with the laws of the State of Michigan without reference to its choice of law principles." ECF 9-2, PgID 65. And Michigan principles of contractual interpretation do not vary from "ordinary contract principles." *Howard*, 290 F. Supp.

5

"[r]eleases are enforceable if they are determined to have been 'knowingly and voluntarily executed.'" *Id.* (citing *Runyan v. Nat'l Cash Reg. Corp.*, 787 F.2d 1039, 1044–45 (6th Cir. 1986) and quoting *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995)). "[T]o make this assessment," courts consider the following factors:

> (1) the plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; [and] (5) the totality of the circumstances.

*Id.* (citing *Runyan*, 787 F.2d at 1044–45).

The "Release of Claims" provision in the Agreement detailed that Plaintiff would release "any and all claims . . . whether now known or unknown." ECF 9-2, PgID 63. And the Agreement provided several examples of potential claims, including those arising under "Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act, . . . and any similar [S]tate laws." *Id.* Based on the plain language of the Agreement, Plaintiff released all Title VII, ADEA, and ELCRA claims that arose at or before the time she signed the Agreement. The Court must next determine whether there is a genuine issue of material fact that Plaintiff's release was "knowingly and voluntarily executed" based on the five-factor test. *Adams*, 67 F.3d at 583.

The first four factors weigh heavily in favor of enforcing the Agreement. Plaintiff had significant experience as a finance executive, and she successfully

---

2d at 790; *Wilkie v. Auto-Owners Ins.*, 469 Mich. 41, 47 (2003) ("[W]e examine the language in the contract, giving it its ordinary and plain meaning if such would be apparent to a reader of the instrument.").

6

negotiated the terms of the Agreement over a six-week period. ECF 32, PgID 428; ECF 15, PgID 94–95 (Plaintiff was "a finance executive working for over two [] decades with Defendant."); ECF 32-2, PgID 456–57 (negotiations); *id.* at 114 ("I used to work for legal in India."). She was therefore "generally knowledgeable and aware of [her] rights." *Adams*, 67 F.3d at 583; *see Gascho v. Scheurer Hosp.*, 400 F. App'x 978, 981 (6th Cir. 2010) ("It is fair to conclude that an experienced [employee], with her training and background, could comprehend the meaning and effect of a settlement agreement."). What is more, Plaintiff had more than four months to consult a lawyer and decide whether to sign the Agreement. ECF 9, PgID 48 ("[Defendant] provided her the final version [of the Agreement] on May 14, 2020. [Plaintiff] was advised that she could consult an attorney and was given until September 30, 2020[] to sign it.") (citing ECF 9-2); *see also Adams*, 67 F.3d at 583 (holding that "five days in which to consider whether to sign [a] waiver" and advice "to consult with an attorney" was sufficient to satisfy the second factor); *Gascho*, 400 F. App'x at 982 ("[A] twenty-one-day consideration period and a seven-day reconsideration period suffices to establish a legitimate waiver."). Beyond that, the terms of the waiver are plain, unambiguous, and "easily understandable by someone of [Plaintiff's] abilities." *Adams*, 67 F.3d at 583. And Plaintiff negotiated the terms of the Agreement with Defendant "over several weeks," which resulted in consideration in the amount of $354,000. ECF 9, PgID 48; ECF 32-2, PgID 540; ECF 15-3, PgID 118 (lump-sum payment of $132,780).

As for the last factor, Plaintiff argued that misrepresentation "surrounded the execution of the waiver," *Shaheen v. B.F. Goodrich Co.*, 873 F.2d 105, 107 (6th Cir. 1989), and rendered the waiver invalid. ECF 34, PgID 566–67. The "totality-of-circumstances test . . . allows claimants to invoke other considerations, including the risk that the waiver was a product of duress and thus involuntary." *Gascho*, 400 F. App'x at 982 (citations omitted). And "[p]roperly executed waivers of possible employment-related discrimination claims knowingly and voluntarily made between an employee and his employer will be enforced absent the typical exceptions for fraud, duress, lack of consideration or mutual mistake." *Shaheen*, 873 F.2d at 107. Although the first four factors strongly support a valid waiver, the final allegation about misrepresentation could render the Agreement unenforceable if supported by sufficient facts. *See, e.g.*, *First Cap. Bank of Ky. v. Hammann*, No. 3:08CV-646, 2010 WL 2228282, at *3 (W.D. Ky. June 2, 2010) (finding that "had [a bank] conducted an appraisal, determined the value to be $1,000,000.00 and informed Defendants that the property was worth $900,000.00 without informing them of the appraisal" that misrepresentation might invalidate the release).

But Plaintiff provided no evidence that misrepresentation caused her to sign the Agreement. *See generally* ECF 34. Plaintiff instead argued additional discovery is still necessary. *Id.* at 563–64. The parties engaged in five months of discovery, *see* ECF 21, during which time Plaintiff deposed a human resources representative, ECF 30, PgID 353. The Court will not allow discovery to continue indefinitely while Plaintiff searches for evidence that may not exist to support her assertion that she

did not knowingly and voluntarily waive her claims. What is more, Plaintiff was not diligent during the discovery period. Plaintiff listed the proposed deponents in her initial disclosures and was aware of them at the outset of the lawsuit, but she waited until two weeks before the discovery cutoff to serve fourteen deposition notices. ECF 36, PgID 791; ECF 30, PgID 351.

Regardless, the Court only allowed initial discovery to ascertain the "totality of circumstances" of the relevant transactions. ECF 17, PgID 135. And the parties presented sufficient information from which the Court may analyze the "totality of the circumstances." It is undisputed that Plaintiff chose, well before the deadline, not to seek additional employment, accepted a significant sum of money, and signed a waiver of her claims, *supra*. And Plaintiff testified that she did so because she assumed she would be unable to find additional employment with Defendant. ECF 32-3, PgID 464 ("I knew I was not going to get a position, I wanted to move on."); *id.* at 443 ("I felt it was time to separate."). Plaintiff therefore did not rely on a misrepresentation about available positions when she signed the Agreement. In fact, Plaintiff was aware of three returning expatriates who were offered positions for which she believed she was qualified before she signed the Agreement. *Id.* at 459–60. Plaintiff never applied for any positions and never asked management about open positions. *Id.* at 454. And Plaintiff chose to sign the Agreement before the deadline because "at that point [Defendant was] not responding, I knew I was not going to get a position, I wanted to move on." *Id.* at 464. Plaintiff therefore acquiesced that she did not rely on any representations about job availability when she decided to sign

9

the Agreement. She chose to sign the Agreement instead of applying for a new position because she "felt it was time to separate." *Id.* at 443. Additional discovery regarding alleged misrepresentations is therefore unnecessary. Considering the "totality-of-circumstances," Plaintiff's decision to sign the Agreement was knowing and voluntary.

All five factors support finding that Plaintiff knowingly and voluntarily waived her claims. The Court will therefore grant summary judgment in favor of Defendant on the employment discrimination claims. The Court will also grant summary judgment for Defendant on the claim for declaratory relief because it cannot be maintained without an underlying cause of action. *See Turaani v. Sessions*, 316 F. Supp. 3d 998, 1015 (E.D. Mich. 2018) (citation omitted). Finally, because there is no longer a case or controversy, the Court will deny the motions to extend and compel discovery as moot.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion for summary judgment [32] is **GRANTED**.

**IT IS FURTHER ORDERED** that the motions to extend and compel [26, 28] are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's claims are **DISMISSED WITH**

**PREJUDICE**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III<br>STEPHEN J. MURPHY, III<br>United States District Judge

Dated: April 19, 2024